# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD., <br><br> **Plaintiff,** <br><br> v. <br><br> ALIBABA.COM, INC., ALIBABA.COM SINGAPORE E-COMMERCE PRIVATE LTD, and ALIBABA.COM HONG KONG LTD., <br><br> **Defendants.** | Civ. No. 2:15-CV-01702-RWS-RSP |

## THE ALIBABA.COM DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF <u>INVALIDITY PURSUANT TO 35 U.S.C. § 101</u>

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ......................2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................2

IV. STATEMENT OF LAW .......................................................................................4

V. ARGUMENT .........................................................................................................5

    A. Claim 1 Of The '400 Patent Is Invalid Because It Is Directed To A Patent-Ineligible Idea ..........................................................................5

        1. Claims Directed To GUI Implementations Are Abstract ...........................6

        2. Claim 1 Of The '400 Patent Is Directed To An Abstract Idea....................8

    B. Nothing In Claim 1 Of The '400 Patent Transforms It Into A Patent-Eligible Application ................................................................................10

VI. CONCLUSION....................................................................................................14

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
　838 F.3d 1266 (Fed. Cir. 2016) ................................................................................................11

*Affinity Labs of Tex., LLC v. Directv, LLC*,
　109 F. Supp. 3d 916, 942 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016) ............7, 8

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
　838 F.3d 1253 (Fed. Cir. 2016) ................................................................................................11

*Alice Corp. v. CLS Bank, Int'l*,
　134 S. Ct. 2347 (2014) ..........................................................................................4, 5, 11, 13, 14

*Amdocs (Israel) Ltd.  v. Openet Telecom, Inc.*,
　841 F.3d 1288 (Fed. Cir. 2016) ..................................................................................................5

*Apple, Inc. v. Ameranth, Inc.*,
　842 F.3d 1229 (Fed. Cir. 2016) ..........................................................................................6, 7, 9

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
　133 S. Ct. 2107 (2013) ................................................................................................................4

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
　827 F.3d 1341 (Fed. Cir. 2016) ................................................................................................11

*Cloud Satchel v. Amazon.com, Inc.*,
　76 F. Supp. 3d 553 (D. Del. 2014) .............................................................................................7

*EMG Technology, LLC v. Etsy, Inc.*,
　Case No. 6:16-cv-00484-RWS-JDL, 2017 U.S. Dist. LEXIS 28805 (E.D. Tex. Jan. 27,
　2017), *report and recommendation adopted*,
　2017 U.S. Dist. LEXIS 28593 (E.D. Tex. Mar. 1, 2017) .............................................6, 7, 9, 10

*Enfish, LLC v. Microsoft Corp.*,
　822 F.3d 1327 (Fed. Cir. 2016) ..........................................................................................12, 13

*Internet Patents Corp. v. Active Network, Inc.*,
　790 F.3d 1343 (Fed. Cir. 2015) ..................................................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
　132 S. Ct. 1289 (2012) ....................................................................................................4, 5, 14

**Statutes**

35 U.S.C. § 101 ............................................................................................1, 2, 3, 4, 5, 11, 13, 14

Fed. R. Civ. P. 56 ............................................................................................................................1

Defendants Alibaba.com, Inc., Alibaba Singapore E-Commerce Private Ltd. ("Alibaba Singapore"), and Alibaba.com Hong Kong Ltd. ("AHKL") (collectively, the "Alibaba.com defendants") respectfully move, pursuant to Fed. R. Civ. P. 56 and Local Rule CV-56, for partial summary judgment that Claim 1 of U.S. Patent No. 6,690,400 (the "'400 Patent") is invalid under 35 U.S.C. § 101.

## I. INTRODUCTION

Plaintiff Global Equity Management (SA) Pty. Ltd.'s ("GEMSA") suit against the Alibaba.com defendants alleges, *inter alia*, that the Alibaba.com defendants infringe certain claims of the '400 Patent. Following the Court's claim construction order—which invalidated several claims of the '400 Patent as indefinite—claim 1 is the only remaining claim from the '400 Patent that GEMSA asserts against the Alibaba.com defendants. This remaining claim is invalid under 35 U.S.C. § 101.

Claim 1 is directed to "a graphic user interface" ("GUI") comprised of four graphical elements—a "main menu bar," "cabinet selection button bar," "secondary storage partitions window," and "cabinet visible partition window"—which "illustrate" or "represent" underlying computing elements. Claim 1 does not recite or require any of the structural components "illustrated" or "represented" in the claimed "bar[s]" or "window[s]," nor does the claim recite a particular manner for implementing or otherwise achieving these graphical components. Instead, the claim is directed to a resulting graphical image, independent of the generic computing elements represented therein and the manner in which this representation is achieved.

Claim 1 of the '400 Patent therefore fails to recite a "new and useful process, machine, manufacture, or composition of matter, and any new and useful improvement thereof." 35 U.S.C. § 101. This claim, at most, merely recites the graphical representation of an abstract idea, and fails to include any element or combination of elements that would transform this abstract idea into

patentable subject matter. As a result, it is invalid pursuant to the requirements of 35 U.S.C. § 101.

## II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether claim 1 of the '400 Patent is invalid pursuant to the requirements of 35 U.S.C. § 101.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The '400 Patent, entitled "Graphic User Interface For Resources Management of Super Operating System Based Computers," was filed by Parviz Moayyad and Schumann Rafizadeh on September 29, 1999. '400 Patent.[1]

2. The Abstract of the '400 Patent recites a "*Graphic User Interface (GUI)* that enables a user to virtualize the system and to define secondary storage physical devices *through the graphical depiction of cabinets*." '400 Patent at Abstract (emphasis added).

3. During prosecution of the '400 Patent, the patentee stated that, "[a]s disclosed in the 'Background of the Invention,' this invention enables multiple operating system and super operating system computers to *graphically depict* the allocation of computer resources to one or more operating systems from the same or different software developers and select one or more of the existing environments to boot and run on the computer." Ex. B [Response to Office Action, dated Sept. 4, 2002] at 10 (emphasis added).

4. Claim 1 of the '400 Patent states:

A graphic user interface for displaying means for allocating a computer device's resources to multiple operating system environments, partitioned on individual virtual cabinets, on said computer device, said graphic user interface comprising:

    a main menu bar;

---

[1] The '400 Patent is attached hereto as Exhibit A.

>   a cabinet selection button bar;
>
>   said cabinet selection button bar *graphically representing* at least one virtual cabinet;
>
>   each said at least one virtual cabinet *representing* a discrete operating system;
>
>   a secondary storage partitions window;
>
>   a cabinet visible partition window;
>
>   said secondary storage partitions window *graphically illustrating* at least one partition of at least one secondary storage device;
>
>   said cabinet visible partition window *graphically illustrating* a cabinet record corresponding to a selected virtual cabinet on said cabinet selection button bar; and
>
>   each said at least one cabinet visible partition window *representing* an operating system plus application software, databases and memory configured with said selected virtual cabinet.

'400 Patent at 8:62-9:18 (emphasis added).

5. The Court construed the preamble of claim 1 as non-limiting, finding that it "simply states the intended use of the invention."[2] Case No. 2:16-cv-95, Dkt. 232 at 25.

6. The Court construed the "cabinet selection button bar" of claim 1 to be a "collection of user-selectable *graphical items*, each graphical item *representing* a virtual cabinet." *Id.* at 30 (emphasis added). Within this context, the Court described the "bars" of claim 1 as "collections of actionable *items* (e.g., buttons and pull-down menus)." *Id.* (emphasis added).

---

[2] Even the reference to a "computer system" in relation to claim 16 was found to be a statement of the "intended environment" of the claimed GUI, and that it did not impart a structural limitation on claim 16. Case No. 2:16-cv-95, Dkt. 232 at 26. Claim 1 fails to recite a computer system, even as a statement of its intended environment, and therefore the Court's construction excludes such a structural requirement from the claim.

7. The Court construed "secondary storage partitions window" of claim 1 to be a "window that *depicts* secondary storage devices and that is configurable to *depict* their partitions." *Id.* at 39 (emphasis added).

8. The Court construed "cabinet visible partition window" of claim 1 to be a "window that *depicts* one or more virtual cabinets and that is configurable to *depict* their files and partitions." *Id.* at 42 (emphasis added).

9. During prosecution of the '400 Patent, in response to the Examiner's rejection of claim 1 in view of the prior art, the patentee stated that: "Claim 1 includes a cabinet selection button bar and a cabinet visible partition window. These elements provide *visual depiction* of the virtual management of cabinets of the present invention." *Id.* at 12 (emphasis added).

## IV. STATEMENT OF LAW

Section 101 of the Patent Act states that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. If an alleged invention falls outside of the scope of these requirements, then it is not patent eligible. Within this context, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)).

The Supreme Court has set forth a two-part test for determining whether a claimed invention is eligible for patent protection under Section 101. To determine whether a claim is eligible for patent protection, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. v. CLS Bank, Int'l*, 134 S. Ct. 2347, 2355 (2014). The Supreme Court has not established a definitive rule to determine what constitutes an

"abstract idea" sufficient to identify a claim as directed to a patent-ineligible concept. *See id.* at 2357. This "directed to" inquiry does not simply ask whether the claims *involve* a patent-ineligible concept; rather, it applies a filter to the claims, considered in light of the specification, based on whether "their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Within this context, the question is not limited to whether the alleged invention is novel, but also whether the claim preempts the "building blocks" underlying a particular area of inquiry. *See Alice,* 134 S. Ct. at 2354 (if the patent claims sweep too broadly, or only claim the idea that was achieved rather than implementation of the idea, § 101 directs that the patent is invalid).

If they are, the Court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo,* 132 S. Ct. at 1297-98).

## V. ARGUMENT

The one remaining claim of the '400 Patent that GEMSA asserts against the Alibaba.com defendants in this case is invalid because it claims unpatentable subject matter. As discussed below, claim 1, as a whole, is directed to an abstract idea. And no element of claim 1, either alone or in combination with other elements of the claim, ensures that the claim amounts to significantly more than a patent upon the ineligible concept itself. As a result, claim 1 of the '400 Patent is invalid under 35 U.S.C. § 101.

### A. Claim 1 Of The '400 Patent Is Invalid Because It Is Directed To A Patent-Ineligible Idea

Neither the Supreme Court nor the Federal Circuit has articulated a "single, succinct, usable definition or test" for identifying whether an idea is "abstract." *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). As a result, courts have informed their


determination of whether a claimed invention is "abstract" by examining "prior cases in which the patented invention claims something similar." *EMG Technology, LLC v. Etsy, Inc.*, Case No. 6:16-cv-00484-RWS-JDL, 2017 U.S. Dist. LEXIS 28805, at *13 (E.D. Tex. Jan. 27, 2017), *report and recommendation adopted,* 2017 U.S. Dist. LEXIS 28593 (E.D. Tex. Mar. 1, 2017).

### 1. Claims Directed To GUI Implementations Are Abstract

Before analyzing the patentability of the recited GUI of claim 1 of the '400 Patent, it is helpful to review cases in which other GUI-based claims were addressed and analyzed.  In *Etsy*, this Court addressed facts similar to those present here.  *See* 2017 U.S. Dist. LEXIS 28805.  There, the asserted patents were directed to systems and methods of providing an easy way to navigate the Internet or other information sources using a simple graphical user interface displayed on a screen.  *Id.* at *2.  While explaining that prior art user interfaces were more user friendly than command line interfaces, the patentee claimed that they were "still too cumbersome and require[d] too much specialized knowledge for many people to use effectively.  There [were] too many protocols, too many standards, and too many methods for performing seemingly simple tasks." *Id.* at *3.  The patent-in-suit purported to address this problem by providing "a simple user interface to navigate the Internet." *Id.*  In finding the *Etsy* claims abstract, the Court analogized them to the claims addressed by the Federal Circuit in *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016).  *Id.* at **13-14.

In *Ameranth*, the Federal Circuit held that claims directed to the idea of "generating menus on a computer, or generating a second menu from a first menu and sending the second menu to another location" were abstract.  *Ameranth*, 842 F.3d at 1240.  In making this determination, the Federal Circuit analyzed whether the claims "focus on a specific means or method that improves the relevant technology" or are "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1241.  Within this context, the Federal

Circuit found the claimed invention to be abstract because it did not "claim a particular way of programming or designing the software to create menus that have [the claimed] features, but instead merely claim the resulting systems." *Id.*

Using this *Ameranth* analysis, the *Etsy* court found the GUI claims at issue to be similarly abstract. The *Etsy* claims were directed to the concept of "displaying information in a hierarchical tree format on a computer screen." *Etsy*, 2017 U.S. Dist. LEXIS 28805, at **16-17. Patentee argued that its claims were not abstract, but rather directed to "a *specific* navigation interface in the form of a specialized website for handheld or wireless devices running a custom browser" to easily navigate the Internet. *Id.* *19. This Court disagreed, finding that the *claims* (rather than the specification) were not directed to any specification implementation. *Id.* at *20. In particular, this Court found that the asserted claims did not "claim a specific method of programming or building software to create these navigation options, but instead 'merely claim the resulting systems.'" *Id.* at **20-21 (citing *Ameranth*, 842 F.3d at 1241).

Other courts have found similar claims directed to graphical computing elements, without more, to be abstract (and therefore patent ineligible). *See, e.g., Affinity Labs of Tex., LLC v. Directv, LLC*, 109 F. Supp. 3d 916, 942 (W.D. Tex. 2015) ("graphical user interface" is a generic computer component that does not render a claim patent eligible), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016); *Cloud Satchel v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 563 n.9 (D. Del. 2014) (finding Plaintiff failed to address Defendants' argument that "graphical user interface" is a "generic computer component"). To be sure, the Western District of Texas has clearly stated that a "'graphical user interface' is a generic computer component" that "itself does not amount to an inventive concept." *Affinity*, 109 F. Supp. 3d at 942.

### 2. Claim 1 Of The '400 Patent Is Directed To An Abstract Idea

The Court has construed certain terms of claim 1 of the '400 Patent.[3] The Court construed the preamble of claim 1 as non-limiting, finding that it "simply states the intended use of the invention."[4] Case No. 2:16-cv-95, Dkt. 232 at 25. The Court construed the "cabinet selection button bar" of claim 1 to be a "collection of user-selectable *graphical items*, each graphical item *representing* a virtual cabinet." *Id.* at 30 (emphasis added). Within this context, the Court described the "bars" of claim 1 as "collections of actionable *items* (e.g., buttons and pull-down menus)." *Id.* at 30 (emphasis added). The Court construed "secondary storage partitions window" of claim 1 to be a "window that depicts secondary storage devices and that is configurable to *depict* their partitions." *Id.* at 39 (emphasis added). Finally, the Court construed "cabinet visible partition window" of claim 1 to be a "window that *depicts* one or more virtual cabinets and that is configurable to *depict* their files and partitions." *Id.* at 42 (emphasis added). In other words, claim 1 is limited to a graphical *depiction* of computing elements, without any recitation of the actual computing elements depicted therein.

In view of the Court's construction of the preamble as non-limiting (as GEMSA itself advocated for), claim 1 of the '400 Patent is directed generally to a "graphic user interface" with nothing more. Claim 1 recites "bar[s]" and "window[s]" that "graphically illustrate" or "represent" resources to a user; these limitations do not affirmatively recite the underlying structures that are

---

[3] In its claim construction order, the Court found that asserted claims 16 and 28 of the '400 Patent—the only other asserted claims of the '400 Patent—were invalid as indefinite. Case No. 2:16-cv-95, Dkt. 232 at 99.

[4] Even the reference to a "computer system" in relation to claim 16 was found to be a statement of the "intended environment" of the claimed GUI, and that it did not impart a structural limitation on claim 16. Case No. 2:16-cv-95, Dkt. 232 at 26. Claim 1 fails to recite a computer system, even as a statement of its intended environment, and therefore the Court's construction excludes such a structural requirement from the claim.

represented by these limitations, nor do they specify a requirement for the structures "illustrate[d]" or "represent[ed]" by the graphical elements of the claim. Instead, claim 1 simply recites the combination of: "a main menu bar;" "a cabinet selection button bar;" "a cabinet visible partition window;" and "a secondary storage partitions window." '400 Patent at 8:62-9:18 (claim 1). Thus, as was the case in *Ameranth* and *Etsy*, claim 1 of the '400 Patent does not recite a specific method of programming or building software for generation of the claimed GUI, but instead "merely claim[s] the resulting [GUI]." *See Ameranth*, 842 F.3d at 1241; *Etsy*, 2017 U.S. Dist. LEXIS 28805, at **20-21. Claim 1 recites no structure—neither program code nor hardware—for generating the claimed graphical images, nor does it recite a particular way for constructing or provisioning these images. It simply claims the GUI.

The scope of claim 1 is consistent with the disclosure of the '400 Patent specification, as well as the description made by the patentee during prosecution. The '400 Patent specification states that the "invention [of the patent] is a ***Graphic User Interface (GUI)*** that enables a user to virtualize the system and to define secondary storage physical devices ***through the graphical depiction of cabinets***." '400 Patent at Abstract (emphasis added). The patentee stated during prosecution that, "[a]s disclosed in the 'Background of the Invention,' this invention enables multiple operating system and super operating system computers to ***graphically depict*** the allocation of computer resources to one or more operating systems from the same or different software developers and select one or more of the existing environments to boot and run on the computer." Ex. B [Response to Office Action, dated Sept. 4, 2002] at 10 (emphasis added). The patentee also distinguished the prior art by focusing on claim 1's "visual depiction" of certain design elements:

> Claim 1 includes a cabinet selection button bar and a cabinet visible partition window. These elements provide *visual depiction* of the virtual management of cabinets of the present invention.

*Id.* at 12 (emphasis added). Thus, the patentee consistently referred to his alleged invention as being a graphical user interface that provides a visual or graphical depiction of certain computing elements, without affirmatively reciting these computing elements themselves. *See, e.g.*, *id.* ("The prior art does not teach or suggest the [cabinet selection button bar and cabinet visible partition window] limitations these elements support in the current invention."). GEMSA's expert even interprets the '400 Patent, including Claim 1, the same way:

> I would say the invention that seems to be disclosed [in the '400 Patent] is the front end. *It's that graphical user interface to allow for a much more user friendly manipulation of your virtualization environment* as opposed to, let's say a command line interface, where you would have a command and many different options that would be far less intuitive and usable from a human factors perspective.

Ex. C [Deposition of Craig Rosenberg, dated September 30, 2016] at 18:9-17.

As discussed above, claim 1 of the '400 Patent is not directed to a particular hardware or software implementation for improving the functioning of a computer. '400 Patent at 8:62-9:18 (claim 1). Instead, it is directed to the abstract idea of graphically illustrating the organization of computing resources amongst one or more virtual computer environments (*i.e.,* "cabinets") within a given computer. Therefore, consistent with Federal Circuit and other courts' reasoned decisions, the graphical interface recited in claim 1 fails to set forth anything more than an "abstract idea."

### B. Nothing In Claim 1 Of The '400 Patent Transforms It Into A Patent-Eligible Application

Once claim 1 of the '400 Patent is determined to be directed to an abstract idea, the next inquiry in the § 101 analysis is to determine whether additional elements of the claim transform it into patent-eligible subject matter. *See Alice*, 134 S. Ct. at 2355 (if a claim is directed to an abstract

idea, one must "consider the elements of [the] claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application") (internal quotation marks omitted). Here, the answer is no.

"An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea in a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Id.* at 1350. The "inventive concept" inquiry can be performed by looking at the claims, as well as the specification. *See, e.g.*, *Affinity Labs* of Texas, LLC v. Amazon.com Inc., 838 F.3d 1266, 1271 (Fed. Cir. 2016). In the context of claimed graphical user interface inventions, recitation of "routine functions . . . to implement the underlying idea . . . is not enough." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016). Whether analyzing claim 1 alone, or this claim in conjunction with the '400 Patent specification, the "inventive concept" inquiry fails to establish patentability in this case.

Claim 1 itself recites no claim elements, either taken alone or in combination, that transform the claimed invention into something beyond a mere graphical user interface. Claim 1 does not recite structure designed to improve the way a computer operates, either in a single limitation or in the combination of recited elements. This is unlike the claimed invention in *Enfish, LLC v. Microsoft Corp.*, which was "directed to a specific improvement to the way computers operate . . . ." 822 F.3d 1327, 1336 (Fed. Cir. 2016). In *Enfish*, the claim recited a self-referential table for a computer database that functioned different from conventional database structures, which were technically inferior—*i.e.,* the claimed invention disclosed a "specific type of data

structure designed to improve the way a computer stores and retrieves data in memory." *Id.* at 1339. That is not the case here.

Claim 1 of the '400 Patent does not recite *any* technology elements (*e.g.*, hardware components), let alone any *new* technology elements (or ways for using such elements) for displaying the recited "bar[s]" and "window[s]." To the extent that there is any structure recited in claim 1, it is found in the preamble—*i.e.*, "means for allocating a computer device's resources to multiple operating system environments, partitioned on individual virtual cabinets, on said computer device." '400 Patent at 8:62-66. But, as GEMSA argued at claim construction—which the Court agreed with—the preamble of claim 1 is *not* a limitation. Case No. 2:16-cv-95, Dkt. 232 at 25 ("The preambles [of claims 1 and 16 of the '400 Patent] are not limiting. The preamble simply states the intended use of the invention."); *see also* Case No. 2:16-cv-95, Dkt. 169 at 8, 14-15. Without the preamble, claim 1 recites nothing more than a number of graphical elements that "illustrat[e]" or "represent[]" computing elements, without any express requirement for underlying computing elements themselves. '400 Patent at 9:1-18 (reciting the limitations of claim 1, which represent and illustrate "virtual cabinet[s]," "partition[s]," "operating system[s]," "application[s]," "memory" and "databases" but do not affirmatively require any of the underlying represented structure).

Analysis of the '400 Patent specification confirms that claim 1 fails to recite an "inventive concept." The '400 Patent specification provides a discussion of the computer structure and functionality that is implemented in response to manipulation of the GUI of claim 1 as allegedly being inventive, but fails to describe any new or inventive structure associated with the creation of the GUI itself. *See, e.g.*, '400 Patent at 3:30-44, 5:9-52. The specification further discloses a number of prior art technologies that were available for use in creating the claimed GUI,

irrespective of any underlying computer operations that may occur in response to manipulation of the graphical representations of the GUI. *See id.* at 3:13-17. This is consistent with the testimony of GEMSA's own technical expert, who identified a number of known prior art computing elements that could be used to create the GUI of the '400 Patent and distinguished this GUI from the underlying computer processes associated with the actual allocation of resources that could be performed in response to interaction with this GUI. Ex. C [Rosenberg (9/30/2016) Tr.] at 62:5-65:22 (identifying a number of known, prior art computing elements that one of ordinary skill in the art could use to create the GUI of the '400 Patent); *id.* at 16:18-22 ("I see the disclosure in this ['400] patent, and essentially the whole invention, around the graphical user interface, and not so much as the technical details of how virtualization is accomplished.").

Even if GEMSA now argues that claim 1 recites computer structure, that does not save claim 1 from invalidity under § 101. Again, the '400 Patent discloses that the claimed GUI is designed using standard tools for creating graphical user interfaces that were well known to those of skill in the art. *See, e.g.*, '400 Patent at 3:13-17, 5:60-67; Ex. C [Rosenberg Dep.] at 108:10-110:24; Ex. D [Markman Hr'g Tr.] at 39:20-40:24. Additionally, the '400 Patent specification references hard disk partitions, a "virtual table of contents," and standard power management and configuration tools that were all known in the art—*i.e.*, it recites a "generic computer implementation." But "generic computer implementation" does not "transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2357. Here, there is no disclosure of an algorithm that was not otherwise known in the art, or new computer hardware or any inventive use thereof, that could support a finding that the specific GUI of claim 1 improves upon the known computer technology.

As a result, claim 1 of the '400 Patent fails to meet the second element of the *Mayo/Alice* test.

## VI. CONCLUSION

For the reasons set forth above, claim 1 of the '400 Patent is directed to an abstract idea, and it has no claim limitations, when analyzed individually or in combination with the remainder of the claim, that would transform this abstract idea into a patent-eligible invention. Claim 1 merely recites a combination of graphical elements, created using known computing methods, without any recitation of corresponding underlying structure. As such, Defendants respectfully request that the Court grant partial summary judgment that claim 1 of the '400 Patent is invalid for failing to comply with the requirements of 35 U.S.C. § 101.

Dated:  March 9, 2017                                   Respectfully Submitted,

*/s/   J. Mark Mann*
J. Mark Mann
Texas Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
Texas Bar No. 24042033
blake@themannfirm.com
MANN TINDEL THOMPSON
300 West Main
Henderson, Texas 75652
Telephone:  903.657.8540
Facsimile: 903.657.6003
LOCAL COUNSEL

Carey R. Ramos
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212.849.7000
Facsimile: 212.849.7100
careyramos@quinnemanuel.com
LEAD COUNSEL

Jeffrey S. Gerchick
Brett N. Watkins
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
777 6th Street NW, 11th Floor
Washington, D.C. 20001-3706
Telephone:  202.538.8000
Facsimile: 202.538.8100
jeffgerchick@quinnemanuel.com
brettwatkins@quinnemanuel.com

*Attorneys for Defendants Alibaba.com, Inc., Alibaba Singapore E-Commerce Private Ltd., and Alibaba.com Hong Kong Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 9, 2017.

/s/ *J. Mark Mann*
**J. Mark Mann**